Harry SCHACKMAN, Joseph Gross, Nathan DeLuca, Harry Pinch, Charles Gray Strieby and Joseph Richard Touart, Petitioners,

v.

Roger ARNEBERGH, City Attorney for the City of Los Angeles, Evelle J. Younger, District Attorney for the City of Los Angeles, William H. Parker, Chief of Police of the City of Los Angeles, Peter J. Pitchess, Sheriff of the County of Los Angeles, Thomas C. Lynch, Attorney General of the State of California, Municipal Court of the Beverly Hills Judicial District, County of Los Angeles, State of California, Municipal Court of the Los Angeles Judicial District, County of Los Angeles, State of California, and Board of Police Commissioners of the City of Los Angeles, Respondents.

No. 66–784.

United States District Court
C. D. California.

Sept. 27, 1966.

Burton Marks, Beverly Hills, Cal., for petitioners.

Harold W. Kennedy, County Counsel, by Irvin C. Taplin, Jr., Deputy County Counsel, Los Angeles, Cal., for respondents Evelle J. Younger, Los Angeles

County Dist. Atty., Beverly Hills Municipal Court and Los Angeles Municipal Court.

Roger Arnebergh, City Atty., Robert B. Burns, Asst. City Atty., by George J. Franscell, Deputy City Atty., Los Angeles, Cal., for respondents Los Angeles City Atty. Roger Arnebergh, Los Angeles City Chief of Police William H. Parker, Los Angeles Board of Police Commissioners.

Thomas C. Lynch, Atty. Gen., by A. Barry Cappello, Deputy Atty. Gen., Los Angeles, Cal., for respondent California State Atty. Gen. Thomas C. Lynch.

HAUK, District Judge.

This is an action for declaratory judgment and injunction brought by the owners, operators and employees of so-called "arcade" establishments in Los Angeles and Beverly Hills, California, where petitioners exhibit and sell "nudie" motion picture films. The method of operation is to exhibit the films in small booths, utilizing "peep show" machines which are activated when customers deposit silver coins for metered showings measured in terms of minutes proportionate to the value of the coins deposited. After viewing the films, the customers can later purchase the same.

Petitioners have been prosecuted and convicted by respondents for violation of California Penal Code § 311 and § 311.2, the State obscenity statute,[1] and now proceed under the Federal Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988) seeking the empanelment of a three-judge Federal Court (28 U.S.C. §§ 2281–2284) for a declaration that the films were not obscene as a matter of law and that the enforcement, operation and execution of the California obscenity statute has deprived and will continue to deprive petitioners of their civil and constitutional rights protected by the First (freedom of speech), Fourth (freedom from unreasonable searches and seizures), and Fourteenth (equal protection of the laws) Amendments of the United States Constitution. Additionally, petitioners also seek injunctive relief against the various respondent courts and law enforcement agencies and officers of City, County and State to prohibit them from conducting such prosecutions, together with an order compelling the law enforcement agencies and officers to set up a pre-prosecution censorship system to which petitioners could submit future films for a determination as to obscenity prior to exhibiting and selling them.

Originally coming on for hearing upon petitioners' motion for a preliminary in-

---

1. California Penal Code 311
   "§ 311. *Definitions*
   As used in this chapter:
   (a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.
   (b) 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.

   (c) 'Person' means any individual, partnership, firm, association, corporation, or other legal entity.
   (d) 'Distribute' means to transfer possession of, whether with or without consideration.
   (e) 'Knowingly' means having knowledge that the matter is obscene."
   "§ 311.2. *Sending or bringing into state for sale or distribution; printing, exhibiting, distributing or possessing within state*
   "Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

junction and respondents' motions to dismiss the complaint and motions for summary judgment, extensive evidence was presented by both sides and received by the Court at hearings which ran for four days, including the films themselves, which were marked as exhibits and viewed by the Court in their entirety throughout lengthy and eventually boring sessions. Detailed and comprehensive affidavits were submitted by respondents covering all stages of the law enforcement procedures followed in the prosecutions of petitioners. Because of this receipt of evidence and by stipulation of the parties the motions to dismiss were treated as motions for summary judgment, all parties having been given reasonable opportunity to present all material pertinent to the issues. Rule 12(b) and Rule 56, Federal Rules of Civil Procedure. Moss v. Hornig, 214 F.Supp. 324, 330–331 (D.Conn.1962); North American Iron and Steel Co. v. United States, 130 F.Supp. 723, 724 (E.D.N.Y. 1955); Hibben v. Kuchaj, 117 F.Supp. 55, 56 (N.D.Ill. 1953).

· After full consideration of the pleadings and the evidence submitted by the parties, after hearing all arguments by the parties, and after full consideration of the points and authorities presented to the Court in support of the respective positions of the petitioners and the respondents, the Court now makes its decision, findings of fact and conclusions of law that petitioners' application for a convocation of a three-judge Federal Court be denied, and that summary judgment be entered in favor of respondents.

So that the facts will be clear and the findings incontestably correct, the Court must describe in detail the films which it viewed and the actions and gyrations of the models and actresses whose duplicating displays of obscenity and pornography are the central and only themes of these tiresome titillations.

Let, then, the reader be duly warned so that any shock or disgust generated be directed at the films themselves and not at the Court. It is high time that the facts of obscenity and hard core pornography be faced in their full, complete, stark and revolting essence, relieved only by the tawdry tediousness generated by their predominant and pounding appeal to the prurient. If four-letter words are used by the Court, they were used by the shoddy actresses in the films and they should be read in the context of the California obscenity statute, (Penal Code Sections 311 and 311.2). The appeal of the films, taken as a whole, is to a shameful and morbid interest in nudity, sex, and the female organs of sex and excretion, going substantially beyond customary limits of candor in description and representation, and utterly without redeeming social importance.

Sensitive souls may wince at the facts which follow, but no one can gainsay their truth, delineated as accurately as possible.

Borrowing the jargon of the street, it is time to "tell it as it is", to say what this trash actually is, though embarrassingly filthy and wearisomely boring the task may be. So the Court proceeds with the fact finding and the legal conclusions.

The Court having heard the arguments and having examined the proofs offered by the respective parties, and the cause having been submitted for decision, and the Court being fully advised in the premises makes its findings of fact as follows:

## FINDINGS OF FACT

1. That the respondent William H. Parker was the Chief of Police of the City of Los Angeles and had been a member of and the General Manager and Chief Administrative Officer of the Police Department of the City of Los Angeles, which Department has the powers and duty of enforcing the laws of the State of California within the territorial limits of the City of Los Angeles, including the apprehension and arrest of persons reasonably believed to be in violation of Penal Code Section 311.2.

2. That William H. Parker died on July 16, 1966.[2]

3. That the respondent, Roger Arnebergh, was and now is, City Attorney for the City of Los Angeles and at all times mentioned in petitioners' complaint, said respondent was and now is, the duly elected and acting City Attorney of the City of Los Angeles, empowered and required by the Charter of the City of Los Angeles to prosecute any and all misdemeanor offenses occurring within the territorial limits of the City of Los Angeles, including prosecution of Penal Code Section 311.2, a misdemeanor offense.

4. That at all times mentioned in petitioners' complaint, respondent, Evelle J. Younger, was and now is, the duly elected and acting District Attorney for the County of Los Angeles, State of California, empowered and charged with the duty of prosecuting any and all felonies within said County and any and all misdemeanor offenses occurring within the unincorporated territory of said County, including the prosecution of Penal Code Section 311.2, a misdemeanor offense.

5. That at all times mentioned in petitioners' complaint, respondent Peter J. Pitchess, was and now is, the duly elected and acting Sheriff of the County of Los Angeles, State of California, and pursuant to laws of the State of California charged with the duty of enforcing the laws within said County, including the apprehension and arrest of persons reasonably believed to be in violation of Section 311.2 of the Penal Code of the State of California.

6. That at all times mentioned in petitioners' complaint, Thomas C. Lynch was, and now is, the Attorney General of the State of California.

7. That at all times mentioned in petitioners' complaint, the Board of Police Commissioners of the City of Los Angeles was, and now is, a department of the City of Los Angeles exercising a governmental function and charged with the control and management of the Police Department of the City of Los Angeles, and the exclusive authority to grant or revoke permits to engage in the arcade business within the territorial limits of the City of Los Angeles.

8. That The Municipal Court of the Los Angeles Judicial District is an aggregate body consisting of forty-nine judges for the consideration and action on matters of judicial business.

9. That The Municipal Court of the Beverly Hills Judicial District is an aggregate body consisting of two judges for the consideration and action on matters of judicial business.

10. That petitioner, Harry Schackman, was at all times mentioned in petitioners' complaint, and now is, licensed by the City of Los Angeles to conduct an arcade business; said permits having been issued by the respondent Board of Police Commissioners of the City of Los Angeles.

11. That petitioner, Harry Schackman, since 1958, has demanded that respondent Board or respondent William H. Parker provide petitioner with a Board of Review to pass on the obscenity or non-obscenity of films displayed by petitioner in his business establishment. That in addition said petitioner has demanded that respondent Board and/or respondent Parker provide him with guidelines or opinions as to which, if any of the films displayed by petitioner were improper to exhibit and to give petitioner notice and an opportunity to defend or remove said objectionable films from sale or exhibition to the public before any arrest was to be made or any criminal complaint filed. Respondents Board and Parker refused, and still refuse, to do any or all of the foregoing as demanded by petitioner Schackman.

12. That since January, 1965, petitioner Harry Pinch has demanded that

2. The Court respectfully takes judicial notice that Chief Parker, honored and respected as an outstanding law enforcement officer in Southern California, the nation and the world, was Chief of Police when the prosecutions complained of took place, but died before the ruling herein.

respondent Peter J. Pitchess provide petitioner with a Board of Review to pass on the obscenity or non-obscenity of films displayed by him in his business establishment. That in addition said petitioner has demanded that respondent Pitchess provide him with guidelines or opinions as to which, if any, of the films displayed by the petitioner were improper to exhibit and to give petitioner notice and an opportunity to defend or remove said objectionable films from sale or exhibition to the public before any arrest was to be made or any criminal complaint filed. Respondent Pitchess refused, and still refuses, to do any or all of the foregoing as demanded by petitioner Pinch.

13. That Harry Schackman was arrested on or about September 30, 1961, and prosecuted in the respondent Municipal Court of the Los Angeles Judicial District as the owner and permittee at 522 South Main Street for violation of Penal Code Section 311.2 and health and fire ordinances. That said complaint charged violations of Penal Code Section 311.2 and Los Angeles Municipal Code Sections 39.04 (unclean and filthy premises); 39.50(c) (unsanitary place of public amusement); 39.50(b) (unsanitary equipment); 57.10.2 (no fire egress); 57.10.23(a) (no fire exit sign); 57.04.03 (no fire permit); that convictions were obtained on all counts and petitioner Harry Schackman was sentenced for violation of Penal Code Section 311.2 and the Los Angeles Municipal Code Sections 39.05, 57.10.02, 57.10.23(a) and 57.04.03. On appeal, the conviction was reversed as to Section 311.2, but affirmed as to the other counts.

14. That Nathan DeLuca, Joseph Gross and Harry Schackman were arrested on or about November 3, 1965, for violation of Penal Code Section 311.2 at 518 and 522 South Main Street, Los Angeles, California. That complaints were filed in the respondent Municipal Court of the Los Angeles Judicial District in this connection and convictions were obtained against all defendants on January 6, 1966; appeals have been filed in this connection, but not ruled upon as yet by the Appellate Court.

15. That in connection with the prosecution of Harry Schackman, et al., arising from the arrests of September 30, 1961, and November 3, 1965, members of the staff of the City Attorney's office had reviewed the material involved and the manner in which such material was purveyed to the public prior to any arrest, as set forth more fully in paragraph 18, and were of the opinion that such material was obscene and that the persons conducting such premises were in violation of the law.

16. That neither William H. Parker, nor Roger Arnebergh, nor the Board of Police Commissioners took any part in the arrest or prosecution of the petitioners in Beverly Hills as alleged in petitioners' complaint on file herein.

17. That neither Peter J. Pitchess nor Thomas C. Lynch took any part in the arrest or prosecution of the petitioners in Los Angeles as alleged in petitioners' complaint on file herein.

18. That the procedures followed by William H. Parker, Chief of Police; Roger Arnebergh, City Attorney; the Los Angeles Police Department and the City Attorney's office are:

That matters involving alleged violation of Penal Code Section 311.2 are submitted to the Assistant City Attorney in charge of the deputies of the Criminal Division and to members of the City Attorney's staff who are informed of and cognizant of the law pertaining to obscenity and the procedures provided by law for the enforcement thereof, as well as the constitutional guarantees of freedom of speech and press, and the requirements of due process as interpreted and delineated by the Supreme Court of California and the United States Supreme Court.

That where the subject matter of the material submitted by an officer concerns books or other publications or the exhibition or sale of film, the alleged offending matter generally will be examined by the office of the City Attor-

ney, as mentioned in paragraph 18 prior to any arrest and a decision made as to its character for purpose of issuing or refusing a complaint. Thereafter, a police officer making an arrest is armed both with his own knowledge of its character, and has reinforced this opinion by submission of it to a quasi-judicial arm of the court process.

That warrants of arrest are often used, especially where the offense will not be repeated just prior to the arrest, or the arrest can only be made at a time substantially subsequent to the offense.

That search warrants are used under circumstances where contraband material is known to be present in large quantities or where the obscene material is not readily available, as in the case where obscene pictures are kept hidden but proof of their character and location is known.

19. That the jurisdiction of the Police Department of the City of Los Angeles does not include the City of Beverly Hills; that neither Roger Arnebergh, nor William H. Parker, nor the Board of Police Commissioners participated in any manner in the arrests of the petitioners, Harry Pinch, Joseph Touart or Charles Strieby, nor in the prosecution of said persons.

20. That the petitioner Harry Pinch was, and now is, engaged in the business of conducting an arcade, in the same manner as petitioner Harry Schackman. Furthermore, petitioners Charles Gary Strieby and Joseph Richard Touart are employees of petitioner Harry Pinch.

21. That Harry Pinch and Charles Gary Strieby were arrested on or about April 23, 1965, for a violation of Penal Code Section 311.2 in the unincorporated territory of Los Angeles County by members of the Sheriff's Department of the County of Los Angeles and thereafter prosecuted in the Municipal Court of the Beverly Hills Judicial District in Cases Nos. 14168 and 14169 by deputies in the office of the District Attorney of Los Angeles County. At the conclusion of said trial, Harry Pinch and Charles Gary Strieby were adjudged guilty of exhibit-

ing obscene matter, to wit: The film, D-15, in violation of Section 311.2 of the Penal Code of the State of California. Said convictions were affirmed on appeal by the Appellate Department of the Superior Court of the County of Los Angeles in Cases Nos. CRA-6539 and CRA-6540.

22. That Harry Pinch and Joseph Richard Touart were arrested on or about February 24, 1966, by members of the Los Angeles County Sheriff's Department for a violation of Section 311.2 of the Penal Code of the State of California in the unincorporated territory of Los Angeles County. The trial of said case is presently pending in the Municipal Court of the Beverly Hills Judicial District as Cases No. 15694 and No. 15701, and involves the obscenity of the film E-44, "Susan."

23. That the procedures followed by Peter J. Pitchess, Sheriff of Los Angeles County and Evelle J. Younger, District Attorney for the County of Los Angeles are as follows:

With respect to the arrest of those exhibiting alleged obscene films and materials, a Deputy Sheriff personally reviews the films or material and either purchases a copy of said film, or material, or makes notes of that which he has seen. The Deputy Sheriff then takes either the copy of the film or material or the notes to the District Attorney's office for review by a Deputy District Attorney. If, in the opinion of the Deputy District Attorney and the Deputy Sheriff involved, the films or material are obscene as defined by law, the Deputy Sheriff swears out a complaint against the exhibitor of the films or material and obtains a Warrant of Arrest for the defendant named in the complaint. The Deputy then proceeds to arrest the defendant who has exhibited the allegedly obscene film or other material and as an incident to said arrest, either with or without a search warrant, the Deputy picks up the film or material which is the subject matter of the complaint. Only those films spe-

cifically designated in the search warrant or the complaint are seized.

24. That at all times mentioned in petitioners' complaint it was, and it now is, the intention of each of the respondents to fulfill the duties of their respective offices in strict compliance with all legal requirements as contained in the Constitution and laws of the state and nation, and in conformity with court decrees.

25. That at all times mentioned in petitioners' complaint, the respondents, and each of them, acted without malice and in the lawful performance of the duties of their respective offices.

26. No respondent performed any wrongful act which proximately caused injury or damage to petitioners or any of them.

27. That procedures are provided by California statutes which furnish standards and guidelines for the apprehension, arrest and prosecution of public offenses committed therein, including violations of Penal Code Section 311.2, which procedures were followed in the arrests and prosecutions of petitioners herein.

28. That the respondent Thomas G. Lynch did not participate in any of the arrests and prosecutions, or threatened arrests and prosecutions mentioned in petitioners' complaint on file herein.

29. That it was stipulated by and between the parties through their respective counsel, that all motions to dismiss may be treated as motions for summary judgment.

30. The film, O–12, referred to in Paragraph 7 of petitioners' complaint and introduced as Exhibit 1, was viewed by the court. The film consists of a female model clothed in a white blouse open in the front, a half-bra which exposes the upper half of the breasts including the nipples and a pair of white capri pants (which are soon discarded) under which the model wears a pair of sheer panties through which the pubic hair and region are clearly visible. The film consists of the model moving and undulating upon a bed, moving her hands, lips and torso, all clearly indicative of engaging in sexual activity, including simulated intercourse and invitations to engage in intercourse. There is no music, sound, story line or dancing other than exaggerated body movements. On at least three occasions, the female by lip articulation is observed to state, "fuck you", "fuck me". The dominant theme of the film, taken as a whole, obviously is designed to appeal to the prurient interest in sex of the viewer and is patently offensive in that the focus of the camera returns again and again to the genital and rectal area clearly showing the pubic hair and the outline of the external parts of the female genital area. The film is entirely without artistic or literary significance and is utterly without redeeming social importance.

31. The film, O–7, referred to in paragraph 7 of the complaint and introduced as Exhibit 2, is virtually the same as Exhibit 1. The model wears a garter belt and sheer transparent panties through which the pubic hair and external parts of the genitalia are clearly visible. For at least the last one-half of the film, the breasts are completely exposed. At one time the model pulls her panties down so that the pubic hair is exposed to view. Again, the focus of the camera is emphasized on the pubic and rectal region and the model continuously uses her tongue and mouth to simulate a desire for, or enjoyment of, acts of a sexual nature. The dominant theme of the film, taken as a whole, appeals to a prurient interest in sex of the viewer and is patently offensive in its emphasis on the genital and rectal areas, clearly showing the pubic hair and external parts of the female genital area. The film is entirely without artistic or literary significance and is utterly without redeeming social importance.

32. The parties stipulated that the film, D–15, referred to in paragraphs 7 and 10 of the petitioners' complaint and introduced as Exhibit 3, is substantially the same in character and quality as the films introduced as Exhibits 1 and 2.

The court therefore finds that as to Exhibit 3, the dominant theme of the film, taken as a whole, appeals to a prurient interest in sex of the viewer and is patently offensive and is utterly without redeeming social importance.

33. The film E-44 "Susan", referred to in paragraph 11 of the petitioners' complaint and introduced as Exhibit 4, is virtually the same as Exhibits 1, 2 and 3. In addition, the model uses her hands, fingers, lips and tongue to simulate an act of oral copulation. Again, the pubic hair is visible together with the external parts of the genitalia and the focus of the camera emphasizes this area. The model continuously simulates acts of a sexual nature, including sexual intercourse and invitations to engage in such activity. The dominant theme of the film, taken as a whole, is to the prurient interest in sex of the viewer. It is patently offensive and is utterly without redeeming social importance.

34. The film known as Exhibit 19, of the Los Angeles Municipal Court Case No. 150754, referred to in paragraph 4 of the complaint and introduced as Exhibit 5, was viewed by the Court. The Court finds Exhibit 5 to be not quite as repugnant nor flagrant an example as Exhibits 1 through 4. In Exhibit 5, the pubic hair cannot be seen and the simulation of sexual intercourse is not as patent. Still, the model moves her body and hands in obviously sexual ways to simulate sexual activities and the camera's focus again emphasizes the pubic and rectal regions. The dominant theme of the film, taken as a whole, is to a prurient interest in sex of the viewer. It is patently offensive and is utterly without redeeming social importance.

35. The films, PD-11, No. 3, No. O3 and No. 119, referred to in paragraph 25 of the complaint, were introduced as Exhibits 6a, 6b, 6c and 6d respectively, and viewed by the court. These films are virtually the same as Exhibits 1 through 4, with the same uncovering of the physical attributes of the model, the camera's emphasis on the pubic and rectal area, the simulated acts of a sexual nature and invitation to engage in such activity, and the use of the tongue or mouth to indicate a desire for, or enjoyment of, acts of a sexual nature. The dominant theme of the films, taken as a whole, is to the prurient interest in sex of the viewer. They are patently offensive and utterly without redeeming social importance.

36. The films, J-12 "Anita Stein," J-16 "Sharon," Z-1 "Zebra Girl," and E-41 "Kitty Kane," referred to in paragraph 25 of the complaint, were introduced as Exhibits 7a, 7b, 7c and 7d respectively, and viewed by the court. The films are virtually the same as Exhibits 1 through 4, with the same uncovering of the physical attributes of the model, the camera's emphasis on the pubic and rectal area, the simulated acts of a sexual nature and invitation to engage in such activity, and the use of the tongue or mouth to indicate a desire for, or enjoyment of, acts of a sexual nature. The dominant theme of the films, taken as a whole, is to the prurient interest in sex of the viewer. They are patently offensive and utterly without redeeming social importance.

37. That the only agreement among any of the respondents herein was, and is, to prosecute any person whom they reasonably believe to be in violation of Section 311.2 of the Penal Code of the State of California.

38. That no respondent entered into any conspiracy or scheme to enforce Penal Code Section 311.2 or any other law in any illegal, wrongful or arbitrary manner.

39. That the respondents and each of them, acted in good faith under color of State law at all times mentioned in petitioners' complaint.

40. That the allegations contained in petitioners' complaint, inconsistent with the Findings of Fact herein, are untrue.

41. The following Conclusions of Law, insofar as they may be concluded Findings of Fact are so found by this court to be true in all respects. From the foregoing facts the court concludes:

## CONCLUSIONS OF LAW

■ 1. That no respondent did under color of any statute, ordinance, regulation, custom or usage, subject or cause to be subjected the petitioners, or any of them, to the deprivation of any rights, privileges or immunities secured by the Constitution or laws of the United States or of the State of California.

■ 2. That no respondent conspired to abridge or deny to petitioners, or any of them, any of the rights, privileges or immunities secured by the Constitution or laws of the United States or State of California, or any of the civil rights of petitioners or any of them, or deny to petitioners or any of them equal protection of the laws.

■ 3. That neither the Board of Police Commissioners of the City of Los Angeles, nor The Municipal Court of the Beverly Hills Judicial District, nor the Municipal Court of the Los Angeles Judicial District are "persons" within the purview and meaning of 42 U.S.C. Sections 1981 through 1985, and 1988.

■ 4. That no statute of California requires a judicial determination of obscenity as a condition precedent to the institution in good faith, of a complaint and/or arrest for violation of the state obscenity laws, nor is such requirement found in the First or Fourteenth Amendments to the Constitution of the United States.

■ 5. That the procedures provided by California law for the arrest and prosecution of persons charged with violation of California Penal Code, Section 311.2 and which procedures were followed by respondents, and each of them, do not and did not abridge or deny to petitioners, or any of them, any of the rights, privileges or immunities secured to them by the Constitution of the United States, nor deny to them, or any of them, due process or equal protection of the law, nor deprive petitioners, or any of them, of any of their civil rights.

■ 6. That the respondents, and each of them, are immune from suit under the Civil Rights Act for conduct in the performance of their official duties in good faith.

7. No respondent performed any wrongful or illegal act.

8. No respondent entered into a conspiracy to perform an illegal or wrongful act.

■ 9. The respondents, and each of them, could and did have reasonable cause to believe that each of the films mentioned in petitioners' complaint was within the ambit and purview of said Penal Code Section 311.2 and as such prosecutable.

■ 10. The respondents Roger Arnebergh and William Parker, acted reasonably and upon probable cause that Exhibit 1, the film, O–12, violated Section 311.2 of the Penal Code of the State of California. The film O–12, reasonably comes within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the prosecution of petitioners Harry Schackman, Joseph Gross and Nathan DeLuca did not deprive them of any of their rights, privileges or immunities secured by the Constitution and laws of this State or nation.

11. The respondents, Roger Arnebergh and William Parker, acted reasonably and upon probable cause that Exhibit 2, the film, O–7, violated Section 311.2 of the Penal Code of the State of California. The film, O–7, reasonably comes within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the prosecution of petitioners Harry Schackman, Joseph Gross and Nathan DeLuca did not deprive them of any of their rights, privileges or immunities secured by the Constitution and laws of this State or nation.

12. The respondents, Roger Arnebergh, William Parker, Evelle J. Younger and Peter J. Pitchess, acted reasonably and upon probable cause that Exhibit 3, the film, D–15, violated Section 311.2 of the Penal Code of the State of Cali-

fornia. The film, D–15, reasonably comes within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the prosecution of petitioners Harry Schackman, Joseph Gross, Nathan LeDuca, Harry Pinch and Charles Gary Strieby, did not deprive them of their rights, privileges or immunities secured by the Constitution or laws of this State or nation.

13. The respondents, Evelle J. Younger and Peter J. Pitchess, acted reasonably and upon probable cause that Exhibit 4, the film E–44 "Susan," violates Section 311.2 of the Penal Code of the State of California. The film, E–44 "Susan," reasonably comes within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the prosecution of petitioners Harry Schackman and Joseph Richard Touart will not deprive them of any of their rights, privileges or immunities secured by the Constitution and laws of this State or nation.

14. The respondents, Roger Arnebergh and William Parker, acted reasonably and upon probable cause that Exhibit 5 (Exhibit 19 in The Los Angeles Municipal Court, Case No. 150754) violated Section 311.2 of the Penal Code of the State of California. Exhibit 5 reasonably comes within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code and the prosecution of petitioner, Harry Schackman, did not deprive him of any of his rights, privileges or immunities secured by the Constitution and laws of this State or nation.

15. Exhibits 6a, 6b, 6c and 6d; 7a, 7b, 7c and 7d, reasonably come within the ambit and purview of the material prohibited by Section 311.2 of the Penal Code of the State of California and the respondents and each of them have reasonable and probable cause to believe said Exhibits are obscene as that term is defined by law.

16. The petitioners Harry Pinch and Charles Gary Strieby are collaterally estopped from litigating the obscenity of the film, D–15, (Exhibit 3).

17. Summary judgment should be entered in favor of all respondents dismissing the complaint on file herein upon the ground that said complaint fails to state a claim against respondents upon which relief can be granted. There is no genuine issue as to any material fact relating to this action and respondents and each of them are entitled to judgment against petitioners as a matter of law.

18. That the acts and conduct of the respondents, Roger Arnebergh, Evelle J. Younger, William H. Parker, Thomas J. Lynch, and Peter J. Pitchess, with respect to the matters alleged in the complaint, were within the scope and course of their authority, duties, and responsibilities as City Attorney, District Attorney, Chief of Police, Attorney General, and Sheriff, respectively.

19. That after viewing the films referred to in petitioners' complaint, this court is of the opinion that there is reasonable and probable cause to believe said films are obscene and in violation of Section 311 et seq. of the California Penal Code and that since said films are incorporated into the complaint by reference, the complaint does not even formally allege a basis for equitable relief under 28 U.S.C.A. § 2281 et seq., and therefore, petitioners' application for the convocation of a three judge Federal Court is denied. (Idlewild Bon Voyage Liquor Corp. v. Epstein, (1961) 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794).

20. The court has viewed the films referred to in petitioners' complaint and is of the opinion that there is reasonable and probable cause to believe said films are obscene and in violation of Section 311.2 et seq. of the California Penal Code, and therefore the court in the exercise of its discretion, declines to grant petitioners' declaratory relief. Petitioners have an adequate remedy under state law. (Zeitlin v.

Arnebergh (1963) 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152).

21. Neither respondents Pitchess nor Parker nor the Board of Police Commissioners are required by law to provide petitioners with a Board of Review to pass upon the obscenity or non-obscenity of the films displayed by the petitioners in their business establishments.

22. Neither respondents Pitchess, Parker, nor the Board of Police Commissioners are required by law to provide petitioners with opinions or guidelines as to which, if any, of the films displayed by petitioners are improper, nor are any of the respondents required to give petitioners notice and opportunity to remove or defend objectionable films prior to the making of any arrest or the filing of a criminal complaint.

23. The court concludes as a matter of law that it had and has the power to dismiss this action and grant summary judgment; and that, after reviewing all of the pleadings, exhibits to the pleadings consisting of the various films, admissions, affidavits and all of the matters before this court during the two day hearing, it is the court's duty to dismiss this action by granting summary judgment in favor of all of the respondents.

24. For the same reasons the court concludes as a matter of law that dismissal by the granting of the motion for summary judgment is the court's duty to perform by itself as a single-judge court and that a three-judge court should not be convened.

25. Additionally, the court concludes as a matter of law that it has the power and duty to decide this matter as a single-judge court without convening a three-judge court because, after having reviewed all of the pleadings, exhibits to the pleadings, admissions, affidavits and all of the matters before this court during the hearing, there is no substantial Federal question which requires the convening of a three-judge court under 28 U.S.C. Section 2281. Smith v. California (9 Cir. 1964) 336 F.2d 530, 534; Pierre v. Jordan (9 Cir. 1964) 333 F.2d 951, 956–957; Blue and Gold Stamps-U-Save Premium Co. v. Sobieski, (D.C.1961) 190 F.Supp. 133, 134–135; Ex Parte Poresky (1933) 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152; Idlewild Bon Voyage Liquor Corp. v. Epstein (1961) 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794.

26. The court viewed at length and completely and in toto each and every one of the films which are incorporated into the complaint as exhibits and which were the subject matter of the criminal prosecution complained of by petitioners as alleged deprivations of their civil rights in violation of the Civil Rights Acts (42 U.S.C. §§ 1981–1985, 1988). The court concludes as a matter of law that the exhibits and each of them are clearly, unequivocally and incontrovertibly obscene and pornographic in the hard core sense because they come within the reasonable purview and ambit of both the Federal judicial definition of obscenity and hard core pornography, Roth v. United States (1957) 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Mishkin v. New York (1966) 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56; Ginzberg v. United States (1966) 383 U.S. 463, 86 S.Ct. 969, 16 L.Ed.2d 31, and the California statutory definition of obscenity and hard core pornography (California Penal Code Section 311, Zeitlin v. Arnebergh (1963) 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152), so that it is impossible for the court to find any substantial Federal question by way of a deprivation of any civil or constitutional right, whether protected by the Federal Civil Rights Acts (42 U.S.C. §§ 1981–1985) or by the First, Fourth or Fourteenth Amendments to the Constitution of the United States.

Judgment shall be entered accordingly granting summary judgment in favor of respondents and dismissing the action as to each and all of them.