RICHARD DELAP, Chairman, Nursing Home Appeals Board
You have asked two questions relative to the function of the newly created Nursing Home Appeals Board. As noted in your opinion request, the Board was established in accordance with sec. 63r of ch. 215, Laws of 1971, which, inter alia, sets forth a reimbursement formula for providers of nursing home care. The Nursing Home Appeals Board is charged with a statutory duty under sec. 49.45 (6m) (h), Stats., to review such reimbursement rates to nursing homes. That portion of the enactment which is pertinent to both of your questions in this matter reads as follows:
"The appeal board shall review petitions from nursing homes providing Title XIX, state skilled, limited and personal care, for modifications to any reimbursement rate under this subsection for new homes. Upon the findings and recommendations of the appeal board, the secretary of health and social services shall grant such modifications, which may exceed maximums under this section but may not exceed any applicable federal maximums. The board may, upon the presentation of facts, recommend modifications of a home's care rate where demonstrated substantial inequities exist including those resulting from the following, without limitation because of enumeration:
"1. Wages, salaries and related benefit costs.
"2. Historical capital construction costs.
"3. Exceptional care factors."
First, you ask what legal liability may be incurred by the Board, more particularly, what individual liability may result to the Board members on actions taken by the Board in performing the statutory function in granting or failing to grant modifications of nursing home reimbursement rates upon petition of individual nursing homes. *Page 414 
It is readily apparent from an analysis of the statutory function of the Board that its sole duty involves that of decision-making at the administrative level. This is what is known as a quasi-judicial duty. It involves the exercise of judgment and discretion.
The law has always shielded public officers who are charged with such duties. This principle of immunity has a deep root in the common law. It is found asserted in the earliest judicial records and it has been steadily maintained by an undisturbed current of decisions. Fath v. Koeppel (1888), 72 Wis. 289,39 N.W. 535. High public purpose is involved. As stated in Wassermanv. Kenosha (1935), 217 Wis. 223, 226, 258 N.W. 857:
"`* * * such rule applies to all officers in the performance of judicial or quasi-judicial duties, to judges from the highest to the lowest, to jurors, and to all public officers whatever name they may bear; and further, in substance, that if it were otherwise, officers, however conscientious and correct in their official life, would be constantly in danger of having their actions challenged in court by disappointed persons, and that independence necessary to the judicial function seriously interfered with. To avoid that danger, judicial officers, high or low, such officers strictly so called and those quasi-judicial as well, and all in the performance of duties of a judicial nature, within their jurisdiction, have complete immunity from actions for damages on account of their official acts.'"
The Wasserman decision is the basic law in this state. Essentially, it has not been modified. Rather, it has been cited with approval in Bendorf v. Darlington (1966), 31 Wis.2d 570,578, 143 N.W.2d 449. It can be argued that some changes in the immunity rule have been made in traffic situations where accidents have occurred or where there has been an invasion of private property rights. However these decisions are not of concern for our purposes. As stated in Raisanen v. Milwaukee
(1966), 35 Wis.2d 504, 512, 151 N.W.2d 129:
"`Lawfully authorized planning by governmental bodies has a unique character deserving of special treatment as regards the extent to which it may give rise to tort liability. It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-by-day operations of government — for *Page 415 
instance, the garden variety injury resulting from the negligent maintenance of a highway — but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question. * * * to accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts. Acceptance of this conclusion, far from effecting revival of the ancient shibboleth that "the king can do no wrong", serves only to give expression to the important and continuing need to preserve the pattern of distribution of governmental functions prescribed by constitution and statute.'"
Many lawsuits today are brought in federal district court pursuant to 42 U.S.C. sec. 1983, under the Civil Rights Act. Most of these cases involve injunctive or declaratory relief rather than monetary damages. Suits for monetary damages under the Civil Rights Act against a board, commission or agency have been dismissed because such bodies are not regarded as "persons" under the Act. This includes, among others, a parole board in U.S. exrel. Pope v. Williams (E.D. Pa. 1971), 326 F. Supp. 279; a school board in Guelich v. Mounds View Independent Public SchoolDistrict No. 621 (D. Minn. 1972), 334 F. Supp. 1276; a parole board in Williams v. Craven (C.D. Cal. 1967), 273 F. Supp. 649; a board of police commissioners in Schackman v. Arnebergh (C.D. Cal. 1966), 258 F. Supp. 983.
The same considerations are involved in suits against individual board members on the theory that, when individuals are acting in their official capacities, they are mere extensions of the agency, and, therefore, are not persons within the meaning of the Act. Bennett v. Gravelle (D. Md. 1971), 323 F. Supp. 203;Conway v. Alfred I. DuPont School District (D. Del. 1971),333 F. Supp. 1217.
The United States Supreme Court has recognized the immunity of governmental officials, other than judges, who are involved in a quasi-judicial function in their official capacities. Pierson v.Ray (1967), 386 U.S. 547. *Page 416 
Thus, based on the foregoing, it is to be observed that, while the Nursing Home Appeals Board does not enjoy the complete immunity of judges and legislators, it does enjoy substantial immunity which compares favorably to complete immunity under the Civil Rights Act.
Section 165.25 (6), Stats., requires the Attorney General at the request of a department head and approval by the Governor to appear for and defend state officers and employes in tort actions. Section 270.58 (1), Stats., provides that the state shall pay judgments taken against state officers and employes pertaining to carrying out their duties when the court or jury finds that they acted in good faith.
I believe the foregoing, in general terms, delineates civil liability possibilities from an immunity standpoint. If there are specific questions to be answered, the Board may be assured of my complete cooperation in these matters. I have not attempted to cover liability under the criminal statutes involving acts such as bribery or misconduct. The principle of immunity has no applicability, of course, to violations of the criminal law.
Your second question is stated as follows: "What restraints does Chapter 215 establish for the board in granting retroactive adjustments in nursing home reimbursement rates? Since the law deals with rates established on or before November 5, 1971, it has been our interpretation that no adjustments could be made to nursing home rates prior to that date, but that adjustments could be made retroactively back to November 5, 1971. We would appreciate an opinion on the question of whether the board can make retroactive adjustments to November 5, or prior to November 5th."
I am of the opinion that the Board has no authority to make retroactive adjustments prior to March 31, 1972. As previously noted, sec. 63r of the amended budget bill, ch. 215, Laws of 1971, created sec. 49.45 (6m), Stats. Paragraph (a) of the statute sets forth a new formula for nursing home reimbursement. Paragraph (h) of the statute sets forth the authority of the Board to review petitions for modifications to reimbursement "under this *Page 417 
subsection for such homes." Accordingly, the answer to your question is controlled by the date on which the new formula became law.
Section 63r of ch. 215, Laws of 1971, was published on March 30, 1972. It became law on March 31, 1972, the day following publication as provided by sec. 990.05, Stats., which reads:
"* * * Every law or act which does not expressly prescibe [prescribe] the time when it takes effect shall take effect on the day after its publication."
It should be noted that sec. 151 of the amended budget bill, relating to effective dates of various provisions thereof, contains no reference to sec. 63r. Thus, the various statutes created by sec. 63r became effective on March 31, 1972.
The function of the Board is to apply the new formula in rate review determinations. The new formula came into existence as valid law on March 31, 1972. If the legislature intended the new formula to have an earlier effective date, it would have simply provided such a date. It might have used November 5, 1971, the effective date of the budget bill on nursing home reimbursement, or July 1, 1971, the beginning of the present biennium, or even July 1, 1966, the beginning of reimbursement to nursing homes under the Medicaid program. It did not. To speculate as to the effective date of an act is not consonant with well-established canons of construction reiterated by the Wisconsin Supreme Court in Department of Revenue v. Dziubek (1970), 45 Wis.2d 499 at p. 505 as follows:
"`"An amendatory statute, like other legislative acts, takes effect only from its passage, and will not be construed as retroactive or as applying to prior facts or transactions, or to pending proceedings, unless a contrary intention is expresslystated or necessarily implied."'" (Emphasis supplied)
Your second question apparently stems from language used in sec. 149m (1) (b) of ch. 215, Laws of 1971, which reads: *Page 418 
"Until such time as section 49.45 (6m) is implemented, reimbursement rates to nursing homes shall be at the rate in effect prior to November 5, 1971. Upon implementation of the formula on July 1, 1972, retroactive adjustments shall be made in accordance with the new formula."
The first sentence, by clear implication, abolished a flat-rate formula effective from November 5, 1971, to March 31, 1972. The flat-rate formula was established under the budget bill, ch. 125, Laws of 1971, creating sec. 49.45 (6m), Stats. The budget bill became effective November 5, 1971. Prior to that date, a cost-plus reimbursement formula had been established by the department pursuant to sec. 49.45 (11) (a) (1), Stats., 1969, and its predecessors dating back to the advent of the Medicaid program effective July 1, 1966. It should be clear that the date, November 5, 1971, describes a rate. It does not prescribe a time for the new formula to go into effect. It might be noted that the Department of Health and Social Services has already made retroactive adjustments to nursing home rates for the period from November 5, 1971, to March 31, 1972, in accordance with the first sentence of the above-cited paragraph.
The second sentence of the above-cited paragraph does not establish an effective date for the new formula. It merely recognizes that the new formula described by sec. 49.45 (6m), Stats., is in need of implementation by the department. Such implementation will take time as indicated in paragraph (a) of sec. 149m (1) (a), ch. 215, Laws of 1971, which reads:
"The department of health and social services shall develop the rules and procedures necessary to implement the reimbursement system contained in sec. 49.45 (6m) of the statutes, including the departmentally established guidelines under sections 49.18 (1) (b), 49.19 (1) (c), 49.20 (2) and 49.61 (1m), shall take effect upon approval of the joint committee on finance, but no later than July 1, 1972."
Thus, it is apparent that the legislature was concerned with the time between the date of the enactment authorizing the new formula and the date of implementation which was to occur some time later. The term "retroactive adjustments" as used in the second sentence of paragraph (b), supra, when interpreted *Page 419 
contextually, means from the date of implementation to the effective date of the new formula. The effective date of the new formula is, of course, March 31, 1972, as previously established.
Accordingly, I find no ambiguity in paragraph (b) of sec. 149m, ch. 215, Laws of 1971, when it is construed in its entirety along with other statutes in pari materia, that is, statutes relating to the same subject matter. The provisions relating to nursing home reimbursement are definitive and complete. To select a date other than March 31, 1972, for retroactive reimbursement is to supply an intention and then give the statute effect according to such supplied intention. This is not construction, but rather it is legislation. 2 Lewis's Sutherland, Stat. Constr., 2d ed., sec. 366.
RWW:WLJ