Marvin **MILLER**, Covina Publishing, Inc., a corporation, doing business as Collectors Publications, Plaintiffs,

v.

Thomas **REDDIN**, James Harvey Brown, United States of America, and its Agents, the Post Office Department and the United States Attorney General, Defendants.

No. 68–712.

United States District Court
C. D. California.
Nov. 18, 1968.

Harvey A. Schneider, Beverly Hills, Cal., for plaintiffs.

Roger Arnebergh, City Atty., by John A. Daly, Asst. City Atty., Los Angeles, Cal., for defendant Thomas Reddin.

John D. Maharg, County Counsel, Charles Vincent Tackett, Deputy County Counsel and Robert R. Taylor, Deputy County Counsel, Los Angeles, Cal., for defendant James Harvey Brown.

William Matthew Byrne, Jr., U. S. Atty., Frederick M. Brosio, Jr., Larry L. Dier, Asst. U. S. Attys., Los Angeles, Cal., for defendants the United States, and its Agents, Post Office Dept. and U. S. Atty. Gen.

## DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER OF DISMISSAL

HAUK, District Judge.

The matter has come on for hearing upon the First Amended Complaint of the plaintiffs and the three Motions To Dismiss filed by the defendants. Collaterally we must also pass upon plaintiffs' Motion For Convocation Of Three-Judge Court and defendants' opposition thereto.

Plaintiffs are publishers and distributors of five books which are the subject matter of criminal complaints and prosecutions against the plaintiffs filed and

now in progress in the California State Court (Los Angeles Municipal Court), and in the United States District Court for the Central District of California. The prosecution in the State Court is based on the State Obscenity Laws, California Penal Code Sections 311 and 311.-2 [1] The prosecution in the United States District Court for the Central District of California is brought under the Federal Obscenity Statutes, United States Code, Title 18, Sections 1461 and 1462. [2]

The plaintiffs in their First Amended Complaint seek declaratory relief, damages and an injunction against the defendants, alleging that the defendants are conspiring to violate their civil rights by obtaining search warrants, seizing certain materials published by the plaintiffs, and thereafter arresting and prosecuting the plaintiffs and other persons doing business with the plaintiffs. More specifically, the plaintiffs charge that the five books attached to the First Amended Complaint are constitutionally protected material under the "free speech" and "free press" clause of the First Amendment to the United States Constitution, [3] and that the State and Federal prosecutions constitute invalid and unconstitutional prior restraints upon plaintiffs' freedom of speech and expression; that the State and Federal obscenity laws and statutes as so applied, are also unconstitutional under the

1. Cal.Pen.Code §§ 311 and 311.2
"§ 311. *Definitions.*
As used in this chapter:
(a) 'Obscene' means that to the average person, applying contemporary standards, the predominant appeal of the matter, taken as a whole, is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, which goes substantially beyond customary limits of candor in description or representation of such matters and is matter which is utterly without redeeming social importance.
(b) 'Matter' means any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture, or other pictorial representation or any statue or other figure, or any recording, transcription or mechanical, chemical or electrical reproduction or any other articles, equipment, machines or materials.
(c) 'Person' means any individual, partnership, firm, association, corporation, or other legal entity.
(d) 'Distribute' means to transfer possession of, whether with or without consideration.
(e) 'Knowingly' means having knowledge that the matter is obscene."
"311.2 Every person who knowingly: sends or causes to be sent, or brings or causes to be brought, into this state for sale or distribution, or in this state prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor."

2. 18 U.S.C. § 1461 and § 1462.
"§ 1461. Mailing obscene or crime-inciting matter
Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device, or substance; and—
* * * * * * *
Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier. * * * *"
"§ 1462. Importation or transportation of obscene matters
Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—
(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or
(b) any obscene, lewd, lascivious, or filthy phonograph recording, electrical transcription, or other article or thing capable of producing sound;
* * * * * * *
Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—
Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter."

3. U.S.Const. Amend. I
"Congress shall make no law * * * abridging the freedom of speech, or of the press; * * *."

Fifth [4] and Fourteenth [5] Amendments to the United States Constitution; and that the prosecutions, therefore, deprive plaintiffs of their civil rights in violation of the Federal Civil Rights Act, 42 United States Code Sections 1981–1985, 1988.[6]

4. U.S.Const. Amend. V
"No person shall be * * * deprived of life, liberty, or property, without due process of law; * * *."

5. U.S.Const. Amend. XIV.
"Section 1. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

6. 42 U.S.C. §§ 1981–1985, and 1988.
"§ 1981. Equal rights under the law
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."
"§ 1982. Property rights of citizens
All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."
"§ 1983. Civil action for deprivation of rights
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
"§ 1984. Same; review of proceedings
All cases arising under the provisions of this Act in the courts of the United States shall be reviewable by the Supreme Court of the United States, without regard to the sum in controversy, under the same provisions and regulations as are provided by law for the review of other causes in said court."
"§ 1985. Conspiracy to interfere with civil rights—
*      *      *      *      *      *      *

Depriving persons of rights or privileges
(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."
"§ 1988. Proceedings in vindication of civil rights
The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial

Finally, plaintiffs seek the impanelment of a Three-Judge Federal Court, 28 U.S.C. §§ 2281–2284,[7] and assert jurisdiction as to all defendants under the

and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

7. 28 U.S.C. §§ 2281–2284

"§ 2281. Injunction against enforcement of State statute; three-judge court required

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

"§ 2282. Injunction against enforcement of Federal statute; three-judge court required

An interlocutory or permanent injunction restraining the enforcement, operation or execution of any Act of Congress for repugnance to the Constitution of the United States shall not be granted by any district court or judge thereof unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

"§ 2283. Stay of State court proceedings

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

"§ 2284. Three-judge district court; composition; procedure

In any action or proceeding required by Act of Congress to be heard and determined by a district court of three judges the composition and procedure of the court, except as otherwise provided by law, shall be as follows:

(1) The district judge to whom the application for injunction or other relief is presented shall constitute one member of such court. On the filing of the application, he shall immediately notify the chief judge of the circuit, who shall designate two other judges, at least one of whom shall be a circuit judge. Such judges shall serve as members of the court to hear and determine the action or proceeding.

(2) If the action involves the enforcement, operation or execution of State statutes or State administrative orders, at least five days notice of the hearing shall be given to the governor and attorney general of the State.

If the action involves the enforcement, operation or execution of an Act of Congress or an order of any department or agency of the United States, at least five days' notice of the hearing shall be given to the Attorney General of the United States, to the United States attorney for the district, and to such other persons as may be defendants.

Such notice shall be given by registered mail or by certified mail by the clerk and shall be complete on the mailing thereof.

(3) In any such case in which an application for an interlocutory injunction is made, the district judge to whom the application is made may, at any time, grant a temporary restraining order to prevent irreparable damage. The order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the full court. It shall contain a specific finding, based upon evidence submitted to such judge and identified by reference thereto, that specified irreparable damage will result if the order is not granted.

(4) In any such case the application shall be given precedence and assigned for a hearing at the earliest practicable day. Two judges must concur in granting the application.

(5) Any one of the three judges of the court may perform all functions, conduct all proceedings except the trial, and enter all orders required or permitted by the rules of civil procedure. A single judge shall not appoint a master or order a reference, or hear and determine any application for an interlocutory injunction or motion to vacate the same, or dismiss the action, or enter a summary or final judgment. The action of a single judge shall be reviewable by the full court at any time before final hearing.

A district court of three judges shall, before final hearing, stay any action pending therein to enjoin, suspend or restrain the enforcement or execution of a State statute or order thereunder, whenever it appears that a State court of competent jurisdiction has stayed proceedings under such statute or order pending the determination in such State court of an action to enforce the same. If the action in the State court is not prosecuted diligently and in good faith, the district court of three judges may vacate its stay after hearing upon ten days notice served upon the attorney general of the State."

Civil Rights and Elective Franchise jurisdiction statute, 28 U.S.C. § 1343,[8] and as to the Federal defendants—the United States of America, the Post Office Department and the United States Attorney General—under the Federal Administrative Procedure Act and its provisions for judicial review of Government agency actions, 5 U.S.C. §§ 701–706,[9] and the

8. 28 U.S.C. § 1343
"§ 1343. Civil rights and elective franchise
The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

9. "§ 701. Application; definitions
(a) This chapter applies, according to the provisions thereof, except to the extent that—
(1) statutes preclude judicial review; or
(2) agency action is committed to agency discretion by law.
(b) For the purpose of this chapter—
(1) 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include—
(A) the Congress;
(B) the courts of the United States;
(C) the governments of the territories or possessions of the United States;
(D) the government of the District of Columbia;
(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;
(F) courts martial and military commissions;
(G) military authority exercised in the field in time of war or in occupied territory; or
(H) functions conferred by sections 1738, 1739, 1743, and 1744 of title 12; chapter 2 of title 41; or sections 1622, 1884, 1891–1902, and former section 1641(b) (2), of title 50, appendix; and
(2) 'person', 'rule', 'order', 'license', 'sanction', 'relief', and 'agency action' have the meanings given them by section 551 of this title."
"§ 702. Right of review
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392."
"§ 703. Form and venue of proceeding
The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 392."

"§ 704. Actions reviewable
Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority. Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392."

Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202.[10]

The defendants are Thomas Reddin, Chief of Police of the City of Los Angeles; the Honorable James Harvey Brown, Judge of the Los Angeles Municipal Court; the United States of America; and its Agents, the Post Office Department and the United States Attorney General.

For the purpose of this hearing we take the factual allegations of the First Amended Complaint as true. Marvin Miller, a United States citizen, is the majority shareholder of Covina Publishing, Inc., incorporated in Arizona, and conducting business in California under the fictitious trade name of Collectors Publications. Marvin Miller is in charge of and solely responsible for all the publications and operations of Covina Publishing, Inc., and Collectors Publications.

The plaintiffs have published and distributed, and apparently still are publishing and distributing, the five specific books which are attached to and made a part of the First Amended Complaint and which, as we have said, are the subject matter of the two prosecutions now under way against the plaintiffs, one in the Los Angeles Municipal Court and the other in the United States District Court for the Central District of California.

These prosecutions, so the plaintiffs allege, are the result of a "conspiracy" or "scheme" between the Los Angeles Police Department under the direction of the Chief of Police and defendant Thomas Reddin, and the United States Post Office Department through Postal Inspector Donald Schouf, whereby the five books were purchased in the open market and then taken before Municipal Judge and defendant James Harvey

"§ 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 393."

"§ 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 393."

10. 28 U.S.C. §§ 2201 and 2202

"§ 2201. Creation of remedy

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

"§ 2202. Further relief

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

Brown, who thereupon issued warrants for search and seizure of thousands of these books, as well as other books and records made and used in connection with the publication and distribution of the said five books.

The materials so seized under warrant were then disseminated to appropriate police, prosecution and judicial officers and used in the State and Federal prosecutions of the plaintiffs under the respective State and Federal obscenity laws initiated by District Attorney complaints on the State side and Grand Jury indictments on the Federal side.

Parenthetically, plaintiffs claim that the Post Office Department has failed to utilize certain civil administrative procedures authorized under its regulations to seize "nonmailable matter" after conducting hearings, and further claim that the dissemination of the seized materials has resulted in numerous additional prosecutions of distributors of these five books in other States and other Federal Districts, with the result that these distributors have failed to pay plaintiffs for the copies of the five books shipped to them by plaintiffs.

The five books, listed and attached to the First Amended Complaint, are all imprinted with the name of plaintiff, Collectors Publications, and consist of the following:

1. "The Traveler's Companion" by Akbar Del Piombo.
2. "The Gilded Lily" by Harry Street.
3. "The Misfortunes of Mary" by Arnold Kam.
4. "Restless Love" by S. Maxwell.
5. Female Photographs (no author listed).

Plaintiffs allege that as a matter of law none of the aforesaid works is obscene. They contend, therefore, that each of them is constitutionally protected material under the First Amendment to the United States Constitution; that the California and Federal obscenity laws as applied in these prosecutions are unconstitutional; that a declaratory judg-

ment and injunctive relief should be issued against the defendants pursuant to the Fifth Amendment of the Constitution (as against the Federal prosecutions) and pursuant to the Fourteenth Amendment of the Constitution (as against the State prosecutions) as well as under the Federal Civil Rights Acts; and that a Three-Judge Federal Court should be convened to hear the matter.

Defendants, on the other hand, contend that the five books as a matter of law cannot be held not to be obscene; that they are reasonably within the ambit and purview of the California and Federal obscenity laws; that they constitute "hard core pornography" not within the protection of the "free speech" and "free press" clause of the First Amendment; that each of the defendants for reasons individually distinct as to them, is immune from suit herein; that the California and Federal obscenity laws, as applied to the prosecutions heretofore stated, are constitutional; that no substantial Federal question has been raised by way of deprivation of any civil or constitutional right protected by the Federal Civil Rights Acts or by the First, Fifth or Fourteenth Amendments to the United States Constitution; and that since there is no substantial Federal question, a Three-Judge Court should not be convened but the matter should be determined by the single-judge Court to whom it is now assigned.

We have examined and analyzed the entire record before this Court, which record includes, among other things, the plaintiffs' original Complaint, the First Amended Complaint, the Motion for Convocation Of Three-Judge Court, the points and authorities submitted by the plaintiffs, and the five books in question. In this examination and analysis we have also covered the defendants' Motions To Dismiss, the Opposition to the convocation of a Three-Judge Court and the points and authorities submitted by defendants.

The cause having been submitted, and being fully advised in the premises the Court now renders its Decision, Findings

of Fact, Conclusions of Law and Order of Dismissal.

## DECISION

THE FIVE BOOKS ARE REASONABLY WITHIN THE AMBIT AND PURVIEW OF THE FEDERAL AND CALIFORNIA OBSCENITY STATUTES AND ARE NOT PROTECTABLE MATERIAL WITHIN THE "FREE SPEECH" AND "FREE PRESS" CLAUSE OF THE FIRST AMENDMENT OR THE DUE PROCESS CLAUSES OF THE FIFTH AND THE FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The Court has read completely from cover to cover and in their tedious, tiresome and tawdry detail, each and every one of these five books. Without exception each and every one of them is replete with revolting and repulsive repetition of sexual and excremental activities—shocking, degrading, depraved and pounding appeals to the prurient interest of the reader. Each one describes, displays, presents and represents, in virtually photographic (we note that one book consists entirely of photographs: "Female Photographs"), phonographic, televisionic and sound-film detail, with sights and noises vibrantly delineated, all of the most intimate parts and functions of the human genitalia and organs of excretion. Every perversion imaginable is portrayed vividly, and in debasing but minute detail, between humans—male and female, male and male, female and female, adult and adult, adult and child, child and child; and between humans (both adult and child) and beasts—dogs, hogs, horses, goats and swans. And all of the children are under the age of eighteen, many as young as eight, nine, twelve, fourteen and seventeen years. Onanism, fetishism, bestiality, pederasty, masturbation, oral and anal copulation, and both liquid urinary and solid fecal excretion are all portrayed, sometimes among couples and consecutively but more often in group orgies and simultaneously.

In each and every one of the four written books we find not only what might in our sexually enlightened and perhaps licentious age be termed the "normal" sexual contacts of vaginal and oral copulation and masturbation between consenting adults of the opposite sex, but also every conceivable and often combined sexual and excretionary contact between consenting and nonconsenting adults and between adults and consenting and nonconsenting children of tender years, male-female, male-male and female-female. The fifth item is a sleazy photographic collection of shoddy female nudes with the focus invariably upon the genitalia and anus, followed by twenty-eight pages of ads pandering erotic paraphernalia and titles.

Now then, more concretely, what do we have in the four written books? Without repeating the detailed specifics, because to do so would be to republish the filth for which plaintiffs are being prosecuted in both State and Federal Courts, but to give in general terms some idea of what they contain, the Court finds in these books a scabrous scatology of *sex-cum-excretion*—realistic descriptions of the noises and sounds and sights associated with sex acts of all kinds, normal and perverted, and with acts of liquid and solid excretion, both male and female; statutory rape of children of tender years—eight, nine, twelve, fourteen, seventeen, and all under eighteen—rape not only vaginal but oral and anal as well; bestiality and copulation with animals—swans, horses, goats, hogs and dogs; incest between mother and son, father and daughter, uncle and niece, aunt and nephew; sodomy and pederasty, both by consent and by force; fetishism with both male and female ejaculations and orgasms induced by inanimate objects such as garters, panties, hose and shoes, both male and female; voyeurism, both male and female, adult and child; animations of the lowest animalistic appetites of man and beast; episode after episode of contrived perversion, so foul, putrid and filthy as to boggle the imagination; beatings, flagellations and other

acts of the so-called "bondage genre" of pornographic literary effort, not only by and with and to adults, both male and female, but by and with and to children eight, nine, ten, twelve, fourteen and seventeen years of age—beatings administered in some cases to children by their own parents in full view of lascivious and lecherous voyeurs, the children's cries for mercy being silenced by punches, kicks and blows of hands, straps, whips and chains; and, finally sacrilegious defilements of things and persons religious—nunneries, monasteries, crucifixes, prayer stools, priests and nuns.

The Court could go on with the libidinous litany of depravities, degradations, debasements and defilements. But before going on to each individual book we continue only to point out that we find in these books every four letter word that is common in this type of obscenity. The Court thought long and hard before mentioning those words. But if we are to be accurate in our findings and correct in our conclusions we must "tell it as it is". The four letter words must be listed because they are used in the books: cock, ball, cunt, piss, shit, fuck, suck. And they are used in descriptions of sexual and excretionary organs and functions, utilized and exploited again and again, often at the same time and in the same place and by the same persons all in visual or physical contact. These books indeed boggle the imagination.

Such depravities have to be seen and read to be believed. But the Court has seen them and read them and knows they are there—in each and all of the five books which we now proceed to examine individually.

## "THE TRAVELER'S COMPANION"

This book has no story line or central theme, but it commences at an old castle with an upstairs bedroom scene of two children, a boy and a girl of ages nine and eleven, on the floor playing with one another's genitals in mutual masturbation, divided by a partition from the girl's mother and Baroness of the castle who is lying nude on a bed beneath a huge ceiling mirror also masturbating. Peeking into her room through the keyhole are the butler and the maid, he bent over her in intercourse.

In a garden pavilion two men about to have a homosexual contact are interrupted by a girl who thereupon has intercourse with one while the other then watches as a voyeur and masturbates himself. A visitor comes along, spies on them, and goes on to the stables where he encourages and then watches the livery boy while he has sexual intercourse with a mare. Two more sexual episodes between male and female are interspersed and then come incest, mother and son; seduction of a priest in a sacrilegious mockery of the Sacrament of Confession, with intercourse between penitent and confessor in the confessional itself; a perverted orgy of two lesbians; two married couples in an adulterous switch of partners; and a general orgy of all guests in the castle—adults and children, male and female, with all sorts of sex actions, normal and perverted.

Then the scene changes to a nunnery where the Baroness' nine-year old daughter is taken by the narrator of this filthy book at the request of her mother. There in the nunnery this man has sex acts with nuns and then what we might call gang intercourse with all of the juvenile delinquents who are staying at the nunnery.

Finally the scene changes back to the castle where the general orgy of the guests is continuing but now with animals interspersed among the crowd. Stabbings of the animals take place and their blood spurts all over the general orgy scene and participants. Secluded throughout the castle are several perverted combinations of sex and excretion, described both photographically and phonographically. Then come fetishism; further bestiality with goats, hogs, pigs and dogs; and the final, grand orgy, during which the building collapses in a cataclysmic, storm-induced holocaust.

## "THE GILDED LILY"

This book commences with a dream sequence of sexual intercourse between Lily and a male swan, interrupted by her awakening and masturbating. It goes on to seduction by Lily of one of the high school students of her roommate and school teacher friend, Janet, and later seduction of Janet's boyfriend in an automobile, with explicit scenes of vaginal and oral copulation. Then the scene shifts to detailed descriptions of lesbian sex acts between Lily and Janet.

Thereafter Lily attends a party staged by show people at which children of six and seven years of age pass around underneath the tables of the guests, masturbating and otherwise playing with the genitalia of the adults—the little girls of these tenders years playing with the men and the little boys playing with the women. Then come staged presentations of forcible rape by oral and vaginal copulation.

A sudden switch of scene takes us to Janet having a casual sex encounter with a policeman and just as suddenly we are taken back to the description of the continuing orgy at the stage show party with its combination of normal and perverted sex acts. After the orgy, Lily is invited to attend a Black Mass the following week and we are returned to the apartment of Lily and Janet where they have a sexual threesome with a delivery boy.

After this we are taken along with Lily and Janet to the Black Mass orgy, which winds up with whipping, bondage, torture and tickling scenes; with forcible assorted activities of normal and perverted sex and excretion, with ejaculations and orgasms induced by explicitly detailed fetishisms and other sex perversions, and finally with a quasi-comic police raid and mass arrests of all participants except Lily and Janet who are whisked to immunity by Janet's erstwhile policeman-lover.

## "THE MISFORTUNES OF MARY"

In this book the opening scene is set by a seventeen-year old Irish virgin named Mary reporting to a house of prostitution in answer to an advertisement for a secretary. She is turned over to a colonel, an old habitué of the house, who by force, by blows, by spanking, by punches, by whippings, manages to tie her naked to a prayer stool in a kneeling position beneath a crucifix. Whereupon the colonel orders Mary to pray to God before the crucifix for "forgiveness for the sins you are going to commit", and while she writhes in pain and shame the colonel piles sacrilege upon sacrilege in a most frightful and obscene degradation of the most sacred symbol of the Christian religion by removing the loin cloth of the crucifix so as to reveal to this young virgin who had never seen a nude male, a grotesque figure, not the crucified Christ, but a satyr in heat with erected penis pointing at her, hooved feet, hairy legs, and horns poking through the crown of thorns.

Then the depraved colonel forces the virgin by rape, statutory rape as well as forcible rape, into a violent oral copulation by beating her with whips and tying her down on a bench. He follows up with forcible anal intercourse. Then with his finger breaking her hymen, to her great pain and suffering, he forces a combination of acts of sex and excretion, the blood of her ravaged hymen spurting about. And throughout all this watching through a two-way mirror from another room are three voyeurs, a Lord Selwin, a Rev. Nicolas and a Lord Justice Strongcock.

Then the voyeurs come into the room and engage in forced and simultaneous oral, anal and vaginal copulation with Mary. The Rev. Nicolas is sent out to fetch his illegitimate daughter while the rest of Mary's assailants bring her to orgasms accompanied by urinary excretions.

When Evangeline, the Reverend's fourteen-year old illegitimate daughter arrives, she and Mary are forced to watch an obscene film depicting young girls all under eighteen years of age in a nunnery school being punished by its Superior Mother Cunigonde (coarse slang word for vagina) and a Reverend who is Chap-

lain of this school, Father Conbite. One of the youngsters is forced to drink a supposed sedative—actually the fabled aphrodisiac Spanish Fly. And then the two adults work on the girl, the nun breaking her hymen and showering her with lesbian kisses and embraces while the Reverend forces oral, vaginal and anal copulation causing her sex organs to function simultaneously with her organs of excretion, the fecal and urinary matter receiving vivid and detailed description.

After the showing of this movie, Evangeline is herself bound on the prayer stool by her natural father, Reverend Nicolas. The madam of the house of prostitution comes in and performs lesbian oral and genital contacts upon her. A sexually aroused police dog is thrust upon her and engages her in bestial intercourse. Then follows between Evangeline and her father, with these other three lechers watching, a forcible incest that is nothing more nor less than an unnatural rape which is only surpassed by the depravities of the other three who force her into simultaneous oral, vaginal and anal copulation with all of them. This is followed by further forced sexual intercourse with the police dog and by vaginal insertion of an artificial phallus.

Finally, and presumably as a mock justification or contrived atonement for all that goes before, the "Misfortunes of Mary" concludes with a police raid that brings Lord Selwin, Lord Strongcock and the Reverend Nicolas "justice" by life sentence punishment.

## "RESTLESS LOVE"

This autographic book portrays episode after tawdry episode, each lasting anywhere from two to four pages throughout the entire 186 pages, of a boy fifteen years of age having incestuous intercourse with his younger sisters, thirteen and fourteen, with mutual acts of oral, vaginal and anal copulation and masturbation, along with occasional fecal and urinary excretions climaxed simultaneously with orgasms and ejaculations.

Interspersed through the episodic incest are oral, vaginal and anal copulations between the boy and two successive governesses, one of whom continues the copulations with the boy in an adulterous relationship after her marriage.

Then follow numerous orgies at the beach with an adult male, the three youngsters engaging with him in all kinds of sex acts, normal and perverted, in singles, doubles, triples and quadruples; and this grown man of thirty sodomizing not only the boy but the two girls time after time after time, teaching them, as he calls it, "all the new tricks you don't know yet."

The book finally ends with a promise by the author to relate more stories of copulation and sodomy with his former partners in sex based on lustful activities occurring in reunions after periods of separation.

## "FEMALE PHOTOGRAPHS"

This book contains 133 photographs of nude girls with the camera invariably focused upon the female genitalia—the vagina, the vulva, the labia and the clitoris; and upon the buttocks, the anus and the sphincter. Each shot graphically includes the pubic hairs surrounding these parts of the human body, these organs of sex and excretion. And virtually every picture has stockings and garter belts so arranged on the female figure as to intensify the concentration and focusing of the view of the reader to the vaginal and anal areas.

The dominant theme and predominant appeal of each of the five books, each taken as a whole, is to the prurient interest in nudity, sex and excretion. Each is patently offensive, utterly without redeeming social value or importance, and totally without literary or artistic significance. Each goes substantially beyond customary limits of candor in presentation, description and representation of nudity, sex and excretion. Each depicts the organs and functions of sex and excretion in a wholly depraved and degenerate succession of contrived sexual

acts, with perversions far outnumbering normal sex contacts. Each book depicts a shameful, salacious, morbid and excessive interest in the organs and functions of sex and excretion. Each panders to the lowest physical appetites and basest animalistic interests of the reader and viewer by contrived episodes of sexual and excretory acts and perversions.

As such, each of the five books is clearly, unequivocally and incontrovertibly obscene and pornographic in the hard core sense, and reasonably comes within the ambit and purview of the Federal statutory definition of obscenity in 18 U.S. Code 1461 and 1462, and the Federal judicial definition of obscenity in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); and Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Moreover, and by the same token, each of the five books reasonably comes within the ambit and purview of the California statutory definition of obscenity in California Penal Code, Section 311, which in essence is actually a more stringent restatement of the Federal judicial definition in Roth, as confirmed by Mishkin and Ginzburg, supra. Zeitlin v. Arnebergh, 59 Cal.2d 901, 31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707 (1963).

Thus, it is impossible for the Court to find any substantial Federal question by way of the deprivation of any civil or constitutional right, whether protected by the Federal Civil Rights Acts (42 U.S. Code §§ 1981, 1985, 1988) or protected by the First, Fifth or Fourteenth Amendments to the Constitution of the United States.

THE FEDERAL PROSECUTION OF THE PLAINTIFFS RAISES NO SUBSTANTIAL CONSTITUTIONAL QUESTION

■ Plaintiffs' contention that the Federal prosecution of the plaintiffs for distributing the said five books by mail and other interstate means is an unconstitutional application of the Federal Obscenity Statutes, 18 U.S.Code, Sections 1461 and 1462, raises no substantial constitutional question. The United States Supreme Court has long since held that these statutes as applied to obscenity are clearly constitutional. Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); Reed Enterprises v. Clark, 278 F.Supp. 372 (D.D.C.1967), aff'd 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28 (1968). As Roth emphatically proclaims at p. 485 of 354 U.S., at p. 1309 of 77 S.Ct.: "We hold that obscenity is not within the area of constitutionally protected speech or press."

The only possible argument, then, that the plaintiff could have in support of any alleged unconstitutional application of the Federal Obscenity Statutes is that the 1958 Amendment, which allowed prosecution in a variety of Federal Districts, somehow rendered these statutes unconstitutional. But this contention, too, was raised and specifically rejected in Reed Enterprises v. Clark, 278 F.Supp. 372 (D.D.C.1967), aff'd 390 U.S. 457, 88 S.Ct. 1196, 20 L.Ed.2d 28 (1968). The plaintiffs, therefore, have failed to state a claim against the United States on which relief can be granted and their First Amended Complaint must be dismissed.

■■ In addition to their efforts to have the Federal Obscenity Statutes and their application in the present context declared unconstitutional, the plaintiffs also seek to enjoin the Federal prosecution by a vague reliance upon general equity jurisdiction. Yet perhaps one of the most honored principles of equity invariably followed and consistently applied by the Supreme Court is that courts of equity will not ordinarily restrain the prosecution of a defendant for a criminal offense. Stefanelli v. Minard, 342 U.S. 117, 120, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Douglas v. City of Jeannette, Pa., 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); Ivy v.

Katzenbach, 351 F.2d 32 (7th Cir. 1965); Steiner v. Hocke, 272 F.2d 384 (9th Cir. 1959). This rule is applied even when it is asserted that prosecution has been initiated and is being carried on under an unconstitutional statute. As the Supreme Court stated in *Douglas*, supra:

"No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction." (319 U.S. at 163, 63 S.Ct. at 881)

Thus, it is clear that plaintiffs state no basis for the invocation of this Court's equitable jurisdiction against the defendants United States of America, the Post Office Department and the Attorney General, and thus cannot succeed on the merits.

■■ This is a case where ordinary criminal procedures assure full vindication and protection of the plaintiffs' rights. The statutes involved do not have the "broad sweep" adverted to in Dombrowski v. Pfister, 380 U.S. 479, 486–488, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). As we have noted, the Federal Obscenity Statutes have been interpreted in a narrow fashion so as to reach only expression which is not protected by the Constitution. See Roth v. United States, supra. Nor does the return of a criminal indictment and prosecution thereunder constitute any irreparable injury warranting equitable relief. Beal v. Missouri Pacific R.R. Company, 312 U.S. 45, 49, 61 S.Ct. 418, 85 L.Ed. 577 (1941); Steiner v. Hocke, 272 F.2d 384 (9th Cir. 1959).

It is clear from this discussion that plaintiffs have not shown any violation of the First Amendment or the Fifth Amendment to the United States Constitution.

## THE CALIFORNIA STATE PROSECUTION IS NOT AN UNCONSTITUTIONAL APPLICATION OF THE STATE OBSCENITY LAWS

■ The procedures afforded by California law for the enforcement of Penal Code, Sections 311 and 311.2 fulfill the constitutional requirements of due process.

■ If the procedure prescribed by the State actually affords the character of due process contemplated by the Federal Constitution, and is followed, there is no denial of the right under the Federal Constitution, while if it does not, or is not followed, the right has been violated. Mueller v. Powell, 203 F.2d 797, 800 (8th Cir. 1953), holding that the Missouri procedure for lawful arrest and detention is synonymous with the Federal due process requirements, and citing Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559 (1941) and Smith v. State of Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940).

The rationale for this principle is aptly set forth in Ker v. California, 374 U.S. 23 at p. 31, 83 S.Ct. 1623, at p. 1629, 10 L.Ed.2d 726 (1963):

"*Mapp*, however, established no assumption by this Court of supervisory authority over state courts, cf. Cleary v. Bolger, 371 U.S. 392, 401 [83 S.Ct. 385, 390, 9 L.Ed.2d 390] (1963), and, consequently, it implied no total obliteration of state laws relating to arrests and searches in favor of federal law. *Mapp* sounded no death knell for our federalism; rather, it echoed the sentiment of Elkins v. United States, supra, [364 U.S.] at 221 [80 S.Ct., at 1446, 4 L.Ed.2d 1669], that 'a healthy federalism depends upon the avoidance of needless conflict between state and federal courts' by itself urging that '[f]ederal-state co-operation in the solution of crime under constitutional standards will be promoted, if only by recognition of their now mutual obligation to respect *the same fundamental criteria* in their approaches.' 367 U.S.,

at 658 [81 S.Ct., at 1693, 6 L.Ed.2d 1081]."

Expanding on this rationale in setting forth the Federal constitutional standard for evaluating state arrests, searches and seizures, *Ker* continues at p. 34, at p. 1630 of 83 S.Ct.:

"The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain. * * * Such a standard implies no derogation of uniformity in applying federal constitutional guarantees but is only a recognition that conditions and circumstances vary just as do investigative and enforcement techniques."

Then in applying the Federal constitutional standard, *Ker* concludes at p. 37, at p. 1632 of 83 S.Ct.:

"This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution. Miller v. United States, supra; United States v. Di Re, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210] (1948); Johnson v. United States, 333 U.S. 10, 15, n. 5 [68 S.Ct. 367, 370, 92 L.Ed. 436] (1948). A *fortiori*, the lawfulness of these arrests by state officers for state offenses is to be determined by California law."

The California Obscenity Laws, as amended in 1961, are in accord with the Federal constitutional standard laid down and discussed in Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966) wherein the Court stated at p. 508, at p. 963 of 86 S.Ct.:

"The New York courts have interpreted obscenity in § 1141 to cover only so-called 'hard-core pornography,' see People v. Richmond County News, Inc., 9 N.Y.2d 578, 586–587 [216 N.Y. S.2d 369] 175 N.E.2d 681, 685–686 * * *. Since that definition of obscenity is more stringent than the *Roth* definition, the judgment that the constitutional criteria are satisfied is implicit in the application of § 1141 below."

The identical statement can be made as to the California courts and the constitutionality of the California Obscenity Laws merely by substituting California Penal Code, Section 311.2 for New York Penal Law § 1141 and substituting Zeitlen v. Arnebergh, 59 Cal.2d 901, 31 Cal. Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707 (1963) for People v. Richmond County News, Inc., supra.

The California statute, by use of the word "knowingly" which is defined therein to mean "having knowledge that the matter is obscene" satisfies the constitutional element of *scienter* required by Penal Code, Section 311(e), Smith v. California, 361 U.S. 147, 154, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

It is clear, then, that control of obscenity by criminal prosecutions, if conducted under proper standards, is constitutional. As concluded by Mr. Justice Brennan, writing for the majority of the Supreme Court in Roth v. United States, 354 U.S. 476, at p. 492, 77 S.Ct. 1304, at p. 1313, 1 L.Ed.2d 1498 (1957):

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."

The concurring opinion in *Roth*, by Chief Justice Warren, arrives at the same result, pp. 495–496, p. 1315 of 77 S.Ct.:

"The defendants in both these cases were engaged in the business of purveying textual or graphic matter openly advertised to appeal to the erotic in-

**232**

terest of their customers. They were plainly engaged in the commercial exploitation of the morbid and shameful craving for materials with prurient effect. I believe that the State and Federal Governments can constitutionally punish such conduct."

Or, as stated in an earlier decision in the same term of the Supreme Court, Mr. Justice Frankfurter writing, Kingsley Books, Inc. v. Brown, 354 U.S. 436, at 440, 77 S.Ct. 1325, at 1327, 1 L.Ed.2d 1469 (1957):

"In an unbroken series of cases extending over a long stretch of this Court's history, it has been accepted as a postulate that 'the primary requirements of decency may be enforced against obscene publications.' (citing Near v. Minnesota, 283 U.S. 697 at page 716, 51 S.Ct. 625 at page 631, 75 L.Ed. 1357). And so our starting point is that New York can constitutionally convict appellants of keeping for sale the booklets incontestably found to be obscene. Alberts v. California, post [354 U.S.], p. 476 [77 S. Ct. 1304, 1 L.Ed.2d 1498], decided this day."

Nor is a state limited in the remedy it selects so long as due process is observed.

"We need not linger over the suggestion that something can be drawn out of the Due Process Clause of the Fourteenth Amendment that restricts New York to the criminal process in seeking to protect its people against the dissemination of pornography. It is not for this Court thus to limit the State in resorting to various weapons in the armory of the law. Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of those remedies in combination, is a matter within the legislature's range of choice. See Tigner v. Texas, 310 U.S. 141, 148 [60 S.Ct. 879, 882, 84 L.Ed. 1124]. If New York chooses to subject persons who disseminate obscene 'literature' to criminal prosecution and also to deal with such books as deodands of old, or both, with due regard, of course, to appropriate opportunities for the trial of the underlying issue, it is not for us to gainsay its selection of remedies." Kingsley Books, Inc. v. Brown, 354 U.S. 436, 441, 77 S.Ct. 1325, 1327, 1 L.Ed.2d 1469 (1957). See also Times Film Corp. v. Chicago, 365 U.S. 43, 50, 81 S.Ct. 391, 5 L.Ed.2d 403 (1961).

■ Neither the California obscenity laws nor the prosecution procedures provided by them are so vague or standardless as to leave the public uncertain or uninformed of the conduct prohibited or to leave judges and juries free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. In affirming a conviction under the California Obscenity Laws, Mr. Justice Brennan upheld the constitutionality of the statutes and procedures in language which we have heretofore quoted but which bears repeating:

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." Roth v. United States—Alberts v. California, 354 U.S. 476, 492, 77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498 (1957).

Thus it is to be expected that the United States Supreme Court would have, and in fact it has, uniformly denied certiorari in all cases where convictions were obtained under the current California Obscenity Laws and their statutory definition of obscenity. Williamson v. California (case below, People v. Williamson, 207 Cal.App.2d 839, 24 Cal.Rptr. 734), cert. den. 377 U.S. 994, 84 S.Ct. 1902, 12 L.Ed.2d 1047 (1964), reh. den. 379 U.S. 871, 85 S.Ct. 13, 13 L.Ed.2d 77 (1964); Wenzler v. California, (case below, People v. Wenzler, App. Dept. Los Angeles Superior Court, Oct. 30, 1962), cert. den. 377 U.S. 994, 84 S.Ct. 1902, 12 L.Ed.2d 1047 (1964), reh. den. 379 U.S. 871, 85 S.Ct. 14, 13 L.Ed.2d 77 (1964).

The Court cannot find that the California prosecution complained of by the plaintiffs constitutes any violation whatsoever of the First, Fifth or Fourteenth Amendments to the United States Constitution.

It necessarily follows that neither the Federal prosecution nor the California prosecution of plaintiffs can in any way give rise to a cause of action under the Federal Civil Rights Acts, 42 United States Code, Sections 1981–1985, 1988, because the basic purpose of the Civil Rights Acts is the protection of the Federal rights, privileges and immunities secured by the Constitution and laws of the United States to all citizens thereof and other persons within its jurisdiction. There being no deprivation of their rights, privileges or immunities secured by the Federal Constitution and laws, the plaintiffs do not have and cannot have any cause of action under the Federal Civil Rights Acts. Kamsler v. M. F. I. Corporation, 359 F.2d 752, 753–754 (7th Cir. 1966); Jones v. Bombeck, 375 F.2d 737, 738 (3d Cir. 1967).

### CERTAIN DEFENDANTS ARE, AND EACH IS, IMMUNE AND SHOULD BE DISMISSED FROM THE SUIT

### THE POST OFFICE DEPARTMENT AND THE ATTORNEY GENERAL:

The plaintiffs have joined the Post Office Department as a party defendant. The law is very clear that a Federal Government department or agency is not subject to suit in either a Federal or State court unless Congress has waived sovereign immunity with respect to that department or agency. Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); Taft Hotel Corp. v. Housing & Home Finance Agency, 262 F.2d 307 (2d Cir. 1958), cert. den. 359 U.S. 967, 79 S.Ct. 880, 3 L.Ed.2d 835 (1959); New Haven Public Schools v. General Services Administration, 214 F.2d 592 (7th Cir. 1954).

Congress has not waived sovereign immunity with respect to the Post Office Department. Therefore, the defendant Post Office Department is not a suable entity and must be dismissed from this action.

It is equally clear that the defendant United States Attorney General must be dismissed from this action. In addition to the general cases confirming the immunity of Government officers from personal liability for acts done under color of office, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed. 2d 1434 (1959); Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), cert. den. 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950); Brown v. Town of Caliente, Nevada, 392 F.2d 546 (9th Cir. 1968), the decided cases are uniform in holding that the Attorney General and his employees are immune from liability under the Civil Rights Acts, 42 U.S.C. 1981–1985, 1988, for actions taken under color of their office. Chafin v. Pratt, 358 F.2d 349, 350 (5th Cir. 1966); United States v. Faneca, 332 F.2d 872, 874 (5th Cir. 1964); Norton v. McShane, 332 F.2d 855, 861–862 (5th Cir. 1964); Swanson v. Willis, 114 F. Supp. 434, 435 (D.C.Alaska 1953). Therefore, even assuming that the plaintiffs have suffered damage as they have alleged, the Attorney General cannot be held liable for those damages and must be dismissed from this action.

### THE HONORABLE JAMES HARVEY BROWN, LOS ANGELES MUNICIPAL COURT JUDGE:

Judges, commissioners, and referees acting in a judicial capacity have long been held to be immune from suits for damages arising out of acts committed within their judicial jurisdiction. Bradley v. Fisher, 80 U.S. 335, 20 L.Ed. 646 (1872); Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); Agnew v. Moody, 330 F.2d 868 (9th Cir. 1964); Haldane v. Chagnon, 345 F.2d 601, 603 (9th Cir. 1965).

■ The most recent Supreme Court case involving a state judge's immunity from liability for his judicial acts is Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In that case, plaintiff sought damages against a judge for violation of the Civil Rights Acts. The Supreme Court expressly held that the judge was immune from liability for acts done within his judicial discretion and that the Civil Rights Acts did not abolish this immunity. As put by Chief Justice Warren at pp. 553–555, at pp. 1217–1218 of 87 S.Ct.:

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335 [20 L.Ed. 646] (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra, 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

"We do not believe that this settled principle of law was abolished by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in Tenney v. Brandhove, 341 U.S. 367 [71 S.Ct. 783, 95 L.Ed. 1019] (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and we presume that Congress would have specifically so provided had it wished to abolish the doctrine."

## THERE IS NO SUBSTANTIAL FEDERAL QUESTION REQUIRING A THREE-JUDGE COURT

■ Since, as we have heretofore shown, there is no substantial Federal constitutional question raised by the prosecution of plaintiffs under the Federal Obscenity Statutes and the California Obscenity Laws, they have not been deprived of any right, privilege or immunity secured by the Federal Constitution, and they have no recourse under the Federal Civil Rights Acts. The First Amended Complaint obviously fails to state a cause of action or a claim against defendants upon which relief can be granted.

The Court necessarily concludes as a matter of law that it has the power and the duty to decide this controversy as a single-judge court without convening a three-judge court because after studying the First Amended Complaint, the defendants' Motions to Dismiss, and the Points and Authorities presented by defendants in support of the Motions to Dismiss and by plaintiffs in opposition thereto, and after reading and carefully analyzing in detail the five books which are the subject matter of the Federal and California State obscenity prosecutions which plaintiffs futilely claim are unconstitutional, the Court is convinced that there is no substantial Federal question which would require the convening of a three-judge court under 28 United States Code, Section 2281. Schackman v. Arnebergh, D.C., 258 F.Supp. 983, 995 (1966), appeal dismissed 387 U.S. 427,

87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); Pinkus v. Arnebergh, D.C., 258 F.Supp. 966, 1005 (1966); Smith v. State of California, 336 F.2d 530, 534 (9th Cir. 1964); Pierre v. Jordan, 333 F.2d 951, 956–959 (9th Cir. 1964); Blue and Gold Stamps—U-Save-Premiums Company v. Sobieski, 190 F.Supp. 133, 134–135 (D.C. Cir. 1961); Ex Parte Poresky, 290 U.S. 30, 31–32, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Idlewilde Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1961).

In accordance with the foregoing Decision, which shall also constitute findings of fact and conclusions of law pursuant to Rule 52, Fed.R.Civ.P., the Court now makes its formal Findings of Fact and Conclusions of Law as follows:

## FINDINGS OF FACT

1. That at all times herein mentioned Thomas Reddin was the Chief of Police of the City of Los Angeles, acting within that capacity.

2. That at all times herein mentioned the Honorable James Harvey Brown was a Los Angeles Municipal Court Judge acting within that capacity.

3. That at all times herein mentioned Donald Schouf was a Postal Inspector for the United States Post Office Department.

4. That at all times herein mentioned Thomas Reddin was acting within the scope of his authority as the Chief of Police of the City of Los Angeles.

5. That at all times herein mentioned the Honorable James Harvey Brown was acting within the scope of his authority as a Judge of the Los Angeles Municipal Court.

6. That at all times herein mentioned Donald Schouf was acting within the scope of his authority as a Postal Inspector for the Post Office Department.

7. That at all times herein mentioned the United States Attorney General was acting within the scope of his authority as United States Attorney General.

8. That the dominant theme and predominant appeal of the book "The Traveler's Companion", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion. It is patently offensive and is utterly without redeeming social value or importance.

9. That the dominant theme and predominant appeal of the book "The Gilded Lily", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion. It is patently offensive and is utterly without redeeming social value or importance.

10. That the dominant theme and predominant appeal of the book "The Misfortunes of Mary", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion. It is patently offensive and is utterly without redeeming social value or importance.

11. That the dominant theme and predominant appeal of the book "Restless Love", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion. It is patently offensive and is utterly without redeeming social value or importance.

12. That the dominant theme and predominant appeal of the book "Female Photographs", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion. It is patently offensive and is utterly without redeeming social value or importance.

13. That the California State prosecution, pursuant to Sections 311 and 311.2 of the Penal Code of the State of California, involving the aforesaid five books attached to the First Amended Complaint herein, was not and is not in violation of the constitutional rights of the plaintiffs secured by the First, Fifth and Fourteenth Amendments to the United States Constitution.

14. That the California State prosecution pursuant to Sections 311 and 311.2 of the Penal Code of the State of California, involving the aforesaid five books attached to the First Amended Complaint herein, was not and is not in violation of the Federal Civil Rights Acts, Sections 1981 through 1985 and 1988 of Title 42 of the United States Code.

15. That the Federal prosecution pursuant to Sections 1461 and 1462, Title 18 of the United States Code, involving the aforesaid five books attached to the First Amended Complaint herein, was not and is not in violation of the constitutional rights of the plaintiffs secured by the First, Fifth and Fourteenth Amendments to the United States Constitution.

16. That the Federal prosecution pursuant to Sections 1461 and 1462, Title 18 of the United States Code, involving the aforesaid five books attached to the First Amended Complaint herein, was not and is not in violation of the Federal Civil Rights Acts, Sections 1981 through 1985 and 1988 of Title 42 of the United States Code.

17. That at all times herein mentioned the defendants did not conspire together in violation of the constitutional rights of the plaintiffs secured by the First, Fifth and Fourteenth Amendments to the United States Constitution.

18. That at all times herein mentioned the defendants did not conspire together in violation of the Federal Civil Rights Acts, Sections 1981 through 1985 and 1988 of Title 42 of the United States Code.

19. The following Conclusions of Law, insofar as they may be deemed Findings of Fact, are so found by this Court to be true in all respects. From the foregoing facts, the Court concludes:

## CONCLUSIONS OF LAW

### I

That the dominant theme and predominant appeal of the book "The Traveler's Companion", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion, and is obscene.

### II

That the dominant theme and predominant appeal of the book "The Gilded Lily", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion, and is obscene.

### III

That the dominant theme and predominant appeal of the book "The Misfortunes of Mary", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion, and is obscene.

### IV

That the dominant theme and predominant appeal of the book "Restless Love", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion, and is obscene.

### V

That the dominant theme and predominant appeal of the book "Female Photographs", taken as a whole, is to the prurient interest of the reader in nudity, sex and excretion, and is obscene.

### VI

That the aforesaid five books are, and each of them is, reasonably within the ambit and purview of the Federal Obscenity Statutes (18 United States Code, Sections 1461 and 1462) and the California Obscenity Laws (California Penal Code, Sections 311 and 311.2), and are not protectible material within the "free speech" and "free press" clause of the First Amendment or the "due process" clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

### VII

That Section 311 of the Penal Code of the State of California is not unconstitutional.

### VIII

That Section 311.2 of the Penal Code of the State of California is not unconstitutional.

### IX

That Sections 1461 and 1462 of Title 18 of the United States Code are not unconstitutional.

## X

That the Federal prosecution of the plaintiffs under Sections 1461 and 1462 of Title 18 of the United States Code raises no Federal constitutional question and is not an unconstitutional application of the Federal Obscenity Statutes.

## XI

That the California state prosecution of the plaintiffs under California Penal Code, Sections 311 and 311.2 raises no Federal constitutional question and is not an unconstitutional application of the State Obscenity Laws.

## XII

That the defendant James Harvey Brown is immune, and should be dismissed from the suit.

## XIII

That the defendant Post Office Department is immune, and should be dismissed from the suit.

## XIV

That the United States Attorney General is immune and should be dismissed from the suit.

## XV

That this Court has the power and duty to decide this matter as a single-judge Court without convening a three-judge Court, because, after having reviewed all the pleadings and exhibits to the pleadings, it concludes there is no substantial Federal question which requires the convening of a three-judge Court.

## XVI

That any Conclusions of Law contained in the Findings of Fact are incorporated herein by reference.

## ORDER

By reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that each and all of the Motions to Dismiss of the defendants herein is, and the same are, hereby granted; and the First Amended Complaint, and each and every alleged cause of action therein contained is, and the same are, hereby dismissed against the defendants, and each and all of them, effective *nunc pro tunc* as of August 5, 1968, the date when this Court by Minute Order in open court at the hearing herein did grant the said Motions to Dismiss, which Minute Order of August 5, 1968 is hereby approved, ratified and confirmed.

Let judgment be entered accordingly.